1

2

3        # FILED

4

5        JAN 2 3 2002

6        CLERK, U.S. DISTRICT COURT
         EASTERN DISTRICT OF CALIFORNIA

7        ᵞ ————————————————
                       DEPUTY CLᴿᴷ

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   DAVID PEACOCK,
                                    NO. CIV. S-01-1589 WBS/DAD
12              Plaintiff,
                                    MEMORANDUM AND ORDER
13       v.                         RE: STATE DEFENDANTS' MOTION
                                    TO DISMISS AND PLAINTIFF'S
14                                  MOTION TO AMEND
     CALVIN TERHUNE, et al.,
15
                Defendants.
16                                  ----oo0oo----

17       Plaintiff brings this action as the personal

18   representative of the estate of Walter Fratus ("Fratus"), an

19   inmate who died from infections in his leg and urinary tract

20   while incarcerated in the California Department of Corrections.

21   Defendants State of California, Terhune, Runnels, Beams, O'Parka,

22   and Clark ("state defendants") now bring this motion to dismiss.

23   Plaintiff opposes the motion, and requests leave to amend to add

24   claims for relief under  42 U.S.C. § 1985 and the Rehabilitation

25   Act, 42 U.S.C. § 794.

26   I.  Background

27       Walter Fratus was a paraplegic serving a prison

28   sentence in the California Department of Corrections.  (First Am.

                              1

                              40

1  Compl. ¶14.)  In 1993, Fratus was diagnosed with a cyst on his
2  kidney, and later developed an infection in his urinary tract and
3  open wounds on his leg.  (Id. ¶¶ 17, 28.)  The First Amended
4  Complaint alleges that the state defendants were aware of
5  Fratus's medical problems, but refused to treat him out of
6  indifference to his condition and in retaliation for his
7  participation in a lawsuit against the California Department of
8  Corrections.  (Id. ¶¶ 17-19; 21-24; 26; 29).  In addition,
9  plaintiff alleges that the state defendants discriminated against
10 Fratus and other disabled inmates by requiring them to go on a
11 daily basis to health care providers for medical supplies.  (Id.
12 22; 24-25.)  In August of 2000, Fratus died because of the
13 infections in his leg and urinary tract.  (Id. ¶ 31.)  Plaintiff,
14 who is Fratus's step-brother and the executor of Fratus's estate,
15 brings this action against the state defendants alleging
16 violations of 42 U.S.C. § 1983 and Title II of the Americans with
17 Disabilities Act, ("ADA"), 42 U.S.C. § 12132.  (Id. ¶¶ 3, 42-51.)

18         The state defendants now bring this motion to dismiss
19 on the grounds that (1) they are immune from liability on
20 plaintiff's ADA claim under the Eleventh Amendment; (2) plaintiff
21 has failed to state a claim for relief under the ADA; (3)
22 plaintiff has failed to state a claim for punitive and emotional
23 distress damages under the ADA; (4) plaintiff's first and third
24 claims for relief under section 1983 are vague and conclusory.
25 II.  Discussion

26         On a motion to dismiss, the allegations of the
27 complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319,
28 322 (1972).  In general, the complaint is construed favorably to

                              2

1  the pleader.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Thus,
2  the court is bound to give the plaintiff the benefit of every
3  reasonable inference to be drawn from the "well-pleaded"
4  allegations of the complaint.  Retail Clerks International Ass'n
5  v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  The court may not
6  dismiss for failure to state a claim unless it appears beyond
7  doubt that the plaintiff can prove no set of facts in support of
8  the claim which would entitle him or her to relief.  Hishon v.
9  King & Spalding, 467 U.S. 69, 73 (1984).  Dismissal is
10  appropriate if plaintiff fails to put forth either (1) a
11  cognizable legal theory, or (2) sufficient allegations of fact
12  under a cognizable theory.  Robertson v. Dean Witter Reynolds,
13  Inc, 749 F.2d 530, 533-34 (9th Cir. 1984).

14      A.  Eleventh Amendment Immunity

15          The Eleventh Amendment has been interpreted broadly to
16  proscribe citizen suits against states and against state actors
17  in their official capacity.  See Symposium, "Shifting the Balance
18  of Power," 53 Standford Law Review 1115 (2001).  However,
19  "Congress may abrogate the States' Eleventh Amendment immunity
20  when it both unequivocally intends to do so and 'act[s] pursuant
21  to a valid grant of constitutional authority.'"  Board of Trustees
22  of the University of Alabama v. Garrett, 531 U.S. 356, 363
23  (2001).

24          Title II of the ADA expressly abrogates state immunity
25  under the Eleventh Amendment.  See 42 U.S.C. §2000d-7(a)(1).
26  Title II prohibits discrimination by "public entities," and
27  permits individuals to sue states and state entities that violate
28  this prohibition.  42 U.S.C. § 1212.  The Ninth Circuit has twice

                                3

1 held that "in enacting Title II of the ADA, Congress validly
2 abrogated state sovereign immunity pursuant to its Fourteenth
3 Amendment powers." <u>Dare v. California</u>, 191 F.3d 1167, 1173 (9th
4 Cir. 1999); <u>Clark v. California</u>, 123 F.3d 1267, 1270-71 (9th Cir.
5 1997). Defendants argue that <u>Dare</u> and <u>Clark</u> are no longer
6 binding authority given the Supreme Court's recent decision in
7 <u>Garrett</u>, which held that Congress acted beyond its constitutional
8 authority in abrogating the states' Eleventh Amendment Immunity
9 under Title I of the ADA. <u>Garrett</u>, 531 U.S. at 372. However,
10 the Court in <u>Garrett</u> specifically stated that it was "not
11 disposed to decide the constitutional issue whether Title II,
12 which has slightly different remedial provisions from Title I, is
13 appropriate legislation . . . ." <u>Id.</u> at 360 n. 1.

14          While <u>Garrett</u>'s reasoning calls into doubt the
15 continued validity of <u>Dare</u> and <u>Clark</u>, this court must follow the
16 decisions of the Ninth Circuit until they are overruled. <u>Willis</u>
17 <u>v. United States</u>, 614 F.2d 1200, 1204 (9th Cir. 1979); <u>Patricia</u>
18 <u>N. v. Lemahieu</u>, 141 F. Supp. 2d 1243, 1250 (D. Haw. 2001); <u>R.J.</u>
19 <u>Williams Company v. Fort Belknap Housing Authority</u>, 509 F. Supp.
20 933, 941 n. 7 (D. Mont. 1981). Ninth Circuit authority compels
21 the conclusion that the Eleventh Amendment does not bar
22 plaintiff's Title II claim against the state defendants.[1]
23 ///
24

25          [1]     The court's finding that Congress properly abrogated
26 the states' Eleventh Amendment Immunity under Title II of the ADA
   applies with equal force to the individual defendants named in
27 their official capacities. <u>See</u> <u>Will v. Michigan Dept. of State</u>
   <u>Police</u>, 491 U.S. 58, 71 (1989)(holding that the Eleventh
28 Amendment applies to state officials in their official
   capacities).

4

1

B.   Sufficiency of Plaintiff's Allegations Under the ADA

2            "[I]n order to state [an] ADA claim, inmates must
3   allege that they have been denied benefits of the services,
4   programs, or activities of the prison, or have been subjected to
5   discrimination, by reason of their alleged disability." Galvin
6   v. Cook, 2000 WL 1520231, *6 (D. Or., Oct. 3, 2000).   Failure to
7   provide health care because of a prisoner's disability states a
8   claim under Title II of the ADA.   Randolph v. Rodgers, 170 F.3d
9   850, 858 (8th Cir. 1999).

10            Defendants contend that plaintiff alleges no more than
11   a claim for medical malpractice, and therefore has failed to
12   allege that Fratus was discriminated against because of his
13   disability.   Although "the ADA does not create a remedy for
14   medical malpractice," Bryant v. Madigan, 84 F.3d 246, 249 (7th
15   Cir. 1996), plaintiff in this case has alleged more than that
16   Fratus was the victim of negligent medical care.   Specifically,
17   plaintiff alleges that the prison changed its policy on providing
18   medical care and supplies so that paralyzed inmates were required
19   to go on a daily basis to another location to get their supplies.
20   (First Am. Compl. ¶ 22).   Plaintiff alleges that this change in
21   policy treated non-disabled inmates differently from disabled
22   persons such as Fratus, who often had difficulty making the "med
23   call" because of his paraplegia and his need to perform "manual
24   bowel care" in his cell.   (Id. ¶¶23-25.)   These allegations
25   suggest that Fratus was denied access to medical supplies and
26   received substandard care because of his disability.   Therefore,
27   plaintiff has stated a claim for relief under the ADA.
28   ///

5

1    C.    Emotional Distress and Punitive Damages Under Title II
2          Defendants argue that even if plaintiff has stated a
3  claim under the ADA, he cannot recover damages for emotional
4  distress or punitive damages.
5          1.    Damages for Emotional Distress
6          The Ninth Circuit has not expressly ruled on the issue
7  of whether emotional distress damages can be recovered under
8  Title II of the ADA.  However, in Ferguson v. City of Phoenix,
9  157 F.3d 668, 675 n.4 (9th Cir. 1998), the Ninth Circuit stated
10 in a footnote that emotional distress alleged in connection with
11 a Title II violation "would, of course, be compensable if
12 intentionally inflicted."  Here, plaintiff alleges that
13 defendants intentionally mistreated Fratus because of his
14 disability and retaliated against him for participating in a
15 lawsuit, causing severe emotional distress. (First Am. Compl. ¶
16 36.)  These allegations raise an inference that defendants
17 intentionally inflicted emotional distress upon Fratus, and
18 therefore plaintiff's claim for emotional distress damages may go
19 forward.[1]
20         2.    Punitive Damages
21         Although plaintiff may seek damages for emotional
22 distress under Title II, it is not at all clear that plaintiff
23 can recover punitive damages.  Title II of the ADA is silent as

25 [1]      The state defendants do not make the argument that
26 damages for emotional distress may not be recovered in an ADA
   case analogous to a wrongful death claim under Cal. Code Civ.
27 Proc. § 377.34.  Accordingly, the court does not consider this
   argument.

6

1 to whether punitive damages are available for a violation of its
2 provisions, and the Ninth Circuit has not ruled on the issue.[2]

3        Until 1992, it was generally acknowledged that punitive
4 damages were not available under Title II.  See Moreno v.
5 Consolidated Rail Corp., 99 F.3d 782, 790(6th Cir.
6 1996)(collecting cases).  This changed after the Supreme Court
7 decided Franklin v. Gwinnet County Public Schools, 503 U.S. 60
8 (1992), which stated the "general rule" that "absent clear
9 direction to the contrary by Congress, the federal courts have
10 the power to award any appropriate relief in a cognizable cause
11 of action brought pursuant to a federal statute."  Id., 530 U.S.
12 at 70-71.[3]  Citing Franklin, some lower courts have held that
13 punitive damages are now available under the remedial provisions
14 of Title II.  See Burns-Vidlak v. Chandler, 980 F. Supp. 1144 (D.
15 Haw. 1997); Kilroy v. Husson College, 959 F. Supp. 22 (D. Maine,
16 1997); Hernandez v. Hartford, 959 F. Supp. 125 (D. Conn. 1997);
17 DeLeo v. Stamford, 919 F. Supp. 70 (D. Conn. 1995); Zaffino v.
18 Surles, 1995 WL 411319 (S.D.N.Y. 1995); Garrett v. Chicago School
19 Reform Board, 1996 WL 411319 (N.D. Ill. 1996).
20 ///
21

22        [2]    Remedies under Title II of the ADA are coextensive with
23 the remedial provisions of section 504 of the Rehabilitation Act,
   and Title VI of the Civil Rights Act of 1964.  See 42 U.S.C.
   12133; 29 U.S.C. 794(a); Doe, 242 F.3d at 457.  All of these
24 statutes are silent as to whether punitive damages may be
25 awarded.

26        [3]    Franklin dealt with the provisions of Title IX of the
   Education Act, which are similar to the provisions of Title VI of
   the Civil Rights Act.  In turn, Title VI provides for the same
27 remedial scheme as section 504 of the Rehabilitation Act, and
   Title II of the ADA.  Accordingly, courts have extended
28 Franklin's holding to Title II of the ADA.

7

1    The better view, however, is that a Title II plaintiff
2  should not be permitted to recover punitive damages.  <u>See</u> <u>Moreno</u>,
3  99 F.3d 782; <u>Doe v. County of Centre</u>, 242 F.3d 437 (3rd Cir.
4  2001); <u>Adelman v. Dunnire</u>, 1996 WL 107853, *4 (E.D. Pa. March 12,
5  1996); <u>Harrelson v. Elmore County</u>, 859 F. Supp. 1465 (M.D. Al.
6  1994).   First, <u>Franklin</u> is not conclusive on whether punitive
7  damage are available under Title II.   Second, Congress clearly
8  did not intend to authorize punitive damage awards when it
9  enacted Title II.   Finally, the Supreme Court has established
10  that punitive damage awards against public entities are
11  inappropriate.

12              a.   <u>Relevance of Franklin</u>

13              <u>Franklin</u> resolved a split among the circuits as to
14  whether monetary damages could be recovered for violations of
15  federal statutes that did not articulate a remedial scheme.
16  <u>Franklin</u>, 503 U.S. at 62, 65.  <u>Franklin</u> did not address the issue
17  of whether punitive damages were available in these
18  circumstances.  As the Sixth Circuit noted:

19              [T]hroughout the <u>Franklin</u> opinion the Court
20              consistently speaks in a compensatory vein – making
21              "good the wrong done", "redress[ing] injuries,"
22              "remedial relief," and the like.  Thus, it is by no
23              means clear that <u>Franklin</u> has more than peripheral
24              relevance to the case at bar.

25              <u>Moreno</u>, 99 F.3d at 789 n. 3.

26  Similarly, the Ninth Circuit's broad pronouncements that the
27  "full panoply of remedies" are available in Title II actions are
28  not conclusive on the issue of punitive damages.  <u>See</u> <u>Kling v.</u>

                                8

1  Los Angeles, 769 F.2d 532, 534 (9th Cir. 1985)(the "full panoply
2  of remedies" are available under section 504 of the
3  Rehabilitation Act); Greater Los Angeles Council on Deafness,
4  Inc. v. Zolin, 812 F.2d 1103 (9th Cir. 1987)(same).  Franklin, if
5  it is even relevant to the issue, requires a more searching
6  inquiry into whether there is clear direction from Congress that
7  punitive damages are not available, and whether punitive damages
8  are appropriate in Title II actions.

9            b.   Direction From Congress

10           In enacting and amending the ADA, Congress provided
11 clear direction that punitive damages cannot be recovered under
12 Title II.  When the ADA was passed in 1990, it incorporated the
13 remedial provisions of section 504 of the Rehabilitation Act.
14 The consensus at this time was that punitive damages were not
15 available under section 504 against any defendant, public or
16 private.  See Moreno, 99 F. 3d at 790.  The only inference of
17 congressional intent that can be drawn from the incorporation of
18 section 504 remedies into Title II is that Congress intended the
19 prohibition against punitive damages under section 504 to apply
20 to Title II.  See id. (noting that despite making numerous
21 amendments to section 504, Congress did nothing to change the
22 "established understanding that punitive damages are not
23 available under § 504".)

24           The 1991 amendments to the ADA confirm that Congress
25 did not intend for punitive damages to be available under Title
26 II.  The Civil Rights Act of 1991 amended Title I of the ADA,
27 which prohibits discrimination in employment, to allow recovery
28 of punitive damages.  42 U.S.C. § 1981a(b)(c).  Title II,

                               9

1  however, remained unchanged.  Had Congress intended to provide
2  for punitive damages under Title II, it would have done so
3  expressly, as it did in Title I.  See Harrelson v. Elmore County,
4  859 F. Supp. 1463 (M.D. Al. 1994).  Moreover, the language of the
5  amendment to Title I reflects Congress's understanding that
6  punitive damages are not appropriate against public entities such
7  as those regulated under Title II.  "A complaining party may
8  recover punitive damages under [Title I] against a respondent
9  (other than a government, government agency, or political
10  subdivision) if the complaining party demonstrates that the
11  respondent engaged in a discriminatory practice . . . with malice
12  or with reckless indifference to the federally protected rights
13  of an aggrieved individual." 42 U.S.C. § 1981a(b)(1)(emphasis
14  added).  In incorporating the remedies of section 504 of the
15  Rehabilitation Act, and in amending Title I of the ADA, Congress
16  has clearly indicated the punitive damages cannot be recovered
17  under Title II.

18                    c.  Appropriateness of Punitive Damages

19          In any case, an award of punitive damages for Title II
20  violations is not appropriate.  The Supreme Court has already
21  found that punitive damages are inappropriate against
22  governmental entities.  In City of Newport v. Fact Concerts,
23  Inc., 453 U.S. 247, 271 (1981), the Court held that
24  municipalities were immune from punitive damages under section
25  1983.  The Court reasoned that at the time Congress enacted
26  section 1983, it did not intend to abolish the common law
27  doctrine that punitive damages were not available against
28  municipalities.  Id. at 259-66.  In addition, the court found

                                    10

1 that the retributive and deterrent purposes of punitive damages
2 would not be served by an award against a municipality because
3 the taxpayer, not the official responsible for the harm, would
4 bear the cost.  Id. at 267-68.  The court was also concerned that
5 the costs of expanded liability might threaten the financial
6 integrity of local governments:

7                The impact of such windfall recovery is likely to be
8                both unpredictable and, at times, substantial, and we
9                are sensitive to the possible strain on local
10               treasuries and therefore on services available to the
11               public at large.  Absent a compelling reason for
12               approving such an award, not present here, we deem it
13               unwise to inflict the risk.  Id. at 270-71.

14               This reasoning is no less persuasive the Title II
15 context.  Title II prohibits discrimination by public entities;
16 Facts Concerts counsels against holding a public entity, and
17 through it the taxpayer, liable for punitive damages, especially
18 when it is evident that Congress did not intend to provide for
19 such relief.  "Franklin permits the courts to award 'any
20 appropriate relief,' but the Court has already concluded in Fact
21 Concerts that punitive damages are not 'appropriate' when the
22 defendant is a government entity.  Nothing in Franklin indicates
23 that the Court was contemplating a change in this rule."  Cheryl
24 L. Anderson, Damages for Intentional Discrimination By Public
25 Entities Under Title II of the Americans with Disabilities Act 9
26 BYU J. Pub. L. 235, 268-69 (1995); see Doe v. County of Centre,
27 242 F. 3d 437 (3rd Cir. 2001)(holding that punitive damages are
28 not recoverable against municipalities under Title II); Moreno,

1 99 F.3d at 792 (noting the "game-show mentality" on the part of
2 some juries that often leads to extremely large punitive damage
3 awards). Because punitive damages are neither consistent with
4 Congress's clear intent, nor appropriate against public entities,
5 the court follows the established rule that they are not
6 available under Title II.

7 D. Sufficiency of Allegations Under Third Claim for Relief

8 Plaintiff's Third Claim for Relief alleges that
9 defendant Runnels, the Warden of High Desert State prison where
10 Fratus was incarcerated, and defendant Beams, the Chief Medical
11 Officer at High Desert State Prison, are liable as supervisors
12 under section 1983. A supervisor can be liable under section
13 1983 for implementing a policy so deficient that "the policy
14 itself 'is a repudiation of constitutional rights' and is 'the
15 moving force of the constitutional violation.'" Redman v. County
16 of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)(quoting
17 Thompson v. Belt, 885 F.2d 642, 646 (5th Cir. 1987).[4]

18 Here, plaintiff alleges that defendants Runnels and
19 Beams changed the policy on providing medical supplies in a way
20 that was deliberately indifferent to the needs of paraplegic
21 inmates such as Fratus. (First Am. Compl. ¶22-24.) Plaintiff
22 alleges that this policy resulted in a lack of medical supplies,
23 which contributed to Fratus's health problems. (Id. ¶ 24.) In
24 addition, plaintiff alleges that Runnels and Beams directed

25

26 _____
[4] Defendants Runnels and Beams cannot be held liable on a
27 theory of vicarious laibility. Monell v. Dep't of Social
Services, 436 U.S. 658, 690-92 (1978), Redman, 942 F. 2d at 1446-
28 47. However, they can be held liable for their own culpable
conduct. See id.

12

1 health care providers to provide inadequate care to Fratus,
2 resulting in the spread of infection that led to Fratus's death.
3 (Id. ¶¶ 28-31.)  Together, these allegations describe a policy
4 that resulted in the repudiation of Fratus's constitutional
5 rights.  Therefore, plaintiff has stated a claim for relief for
6 supervisory liability under section 1983.

7       E.   Sufficiency of Allegations Under First Claim for Relief

8            The First Claim for Relief alleges that defendants
9 Runnels, Beams, Clark and O'Parka are liable under section 1983
10 for violating Fratus's constitutional rights.

11           The state defendants contend that plaintiff's 1983
12 claims are subject to the heightened standard mandated by Branch
13 v. Tunnel, 937 F.2d 1382 (9th. Cir., 1991)(hereinafter "Branch
14 I") and Branch v. Tunnel, 14 F.3d 449, 456 (9th Cir.
15 1994)(hereinafter Branch II").  In Branch I and Branch II, the
16 Ninth Circuit adopted a heightened pleading standard in cases in
17 which subjective intent is an element of a constitutional tort
18 action.  Branch I, at 1386.  The court held that "in order to
19 survive a motion to dismiss, plaintiffs must state in their
20 complaint nonconclusory allegations setting forth evidence of
21 unlawful intent." Id.  A complaint "must be specific and
22 concrete enough to enable the defendants to prepare a response,
23 and where appropriate, a motion for summary judgment based on
24 qualified immunity." Id. (citing Whitacre v. Davey, 890 F.2d
25 1168, 1171 (D.C. Cir., 1989)).

26           Since the decisions in Branch I and Branch II, the
27 United States Supreme Court has looked with disfavor upon
28 judicially heightened pleading standards.  In Leatherman v.

13

1 Terrant County Narcotics Intelligence and Coordination Unit, 507
2 U.S. 163, 164-69, (1993), the Court held that in civil rights
3 cases alleging municipal liability under section 1983 a federal
4 court may not apply a heightened pleading standard more stringent
5 than the usual pleading requirements.  Then, in Crawford-El v.
6 Britton, 523 U.S. 574 (1998), the Court found that the District
7 of Columbia Court of Appeals erred in fashioning a heightened
8 burden of proof for unconstitutional-motive cases against public
9 officials.  Id. at 595.

10       The Ninth Circuit has yet to address the impact of
11 Crawford-El on its decisions in Branch I and Branch II.
12 Crawford-El, however, does address, and reject, judicially-
13 imposed heightened proof standards in individual capacity suits.
14 Given the Supreme Court's disapproval of heightened standards not
15 derived from federal statutory authority or the federal rules,
16 this court does not believe that the Ninth Circuit would continue
17 to apply such a standard in the context of the pleadings in this
18 case.[5]  The liberal pleading standards of Rule 8 are more
19 appropriate.  However, the court need not speculate on what the
20 Ninth Circuit is likely to do; even under the heightened pleading
21 standard adopted in Branch I and II, plaintiff has adequately
22 stated a claim for relief.

23       To state a claim of inadequate medical care under the
24 Eighth Amendment, plaintiff must allege deliberate indifference

25
26       [5]   Several other circuits have concluded that a heightened
   pleading standard no longer applies in constitutional tort cases
27 in which subjective intent is an element.  See Currier v. Doran,
   242 F.3d 905, 916 (10th Cir. 2001); Nance v. Vieregge, 147 F.3d
28 589, 590 (7th Cir. 1998).

                                14

1    to serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104
2    (1976); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.
3    1992).  A defendant is deliberately indifferent if he or she
4    knows that a prisoner faces a substantial risk of serious harm
5    and disregards that risk by failing to take reasonable measures
6    to abate it.  Farmer v. Brennan, 511 U.S. 825, 847 (1984).

7           Plaintiff makes specific allegations of deliberate
8    indifference and causation in her complaint.  The First Amended
9    Complaint alleges inter alia that (1) Runnels and Beams were
10   aware that Fratus had a renal cyst, but refused to treat him
11   (First Am. Compl. ¶ 21); (2) Runnels and Beams changed the policy
12   regarding the provision of medical supplies, and took away his
13   medical supplies, which they knew Fratus needed to maintain his
14   health, (Id. ¶ 22, 24); (3) Clark and Beams were aware that
15   Fratus needed a shower/commode wheelchair and assistance in
16   manual bowel care, but failed to provide this assistance,
17   resulting in the infections that ultimately killed Fratus (Id. ¶
18   23); (4) Clark, O'Parka and Beams saw Fratus sitting in his own
19   feces but did nothing to assist him, exacerbating the infections
20   (Id. ¶ 24); (5) Runnels put Fratus in administrative segregation
21   in retaliation for his participation in the class action lawsuit
22   (Id. ¶ 27); (6) Beams, Clark and O'Parka also retaliated against
23   Fratus by refusing to give him the medical care he needed (Id.  ¶
24   26), see Perry v. Sinderman, 408 U.S. 593, 597 (1972)(retaliation
25   by a state actor for the exercise of a constitutional right is
26   actionable under section 1983); and (6) Runnels and Beams
27   directed physicians to provide inadequate medical care to Fratus
28   (Id. ¶ 29.)

15

1    These allegations identify the persons responsible for
2  the alleged constitutional violations, the circumstances giving
3  rise to the alleged unconstitutional actions, and the causal
4  connection between the action and Fratus's injuries and eventual
5  death.  The complaint is sufficiently specific to state a claim
6  for relief under section 1983 even under the heightened pleading
7  standard set forth in the <u>Branch</u> decisions.

8    F.  <u>Leave to Amend</u>

9    Plaintiff seeks leave to amend to add claims under the
10 Rehabilitation Act, 29 U.S.C. § 794, and under 42 U.S.C. § 1985.
11 Leave to amend a complaint "shall be freely given when justice so
12 requires."  Fed. R. Civ. Proc. 15(a).  Because no scheduling
13 order has been issued, plaintiff is free to amend the complaint.

14    IT IS THEREFORE ORDERED that:

15    (1) defendants' motion to dismiss be, and the same
16 hereby is, GRANTED with respect to plaintiff's claim for punitive
17 damages under Title II of the ADA, but DENIED in all other
18 respects;

19    (2) plaintiff is granted twenty (20) days from the date
20 of this Order to file an Amended Complaint consistent with this
21 Order.

22 DATED: January 23, 2002

23

24                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE
25

26

27

28

                              16

United States District Court
for the
Eastern District of California
January 23, 2002


* * CERTIFICATE OF SERVICE * *


2:01-cv-01589


Peacock

    v.

Terhune

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  January 23, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Anthony Boskovich                    SH/WBS
        Law Offices of Anthony Boskovich
        28 North First Street
        Sixth Floor
        San Jose, CA  95113-1210

        Allen Robert Crown
        Stephen Peter Acquisto
        Attorney General's Office
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA  94244-2550

        Steven R Enochian
        Moss and Enochian
        PO Box 994608
        2701 Park Marina Drive
        Redding, CA  96001-2805


                                    Jack L. Wagner, Clerk

                                    by: Deputy Clerk